HENRY C. WILDER, et al., v. WILLIAM J. BEED, ALEXANDER McDONALD AND WILLIAM W. RAMSEY, ADMINISTRATOR OF W. M. RAMSEY, DECEASED.

JOHN W. WILDER, et al. v. SAME.

An Ohio assignee in insolvency, under R. S. Title II, Chap 4, of a lessee may elect whether to accept or reject the lease.

JELKE, J.

On the 16th day of October, 1890, plaintiffs executed and delivered to Wm. H. Neff, his heirs, representatives and assigns a lease for certain property situated on Price Hill for a term of five years at a yearly rental with a privilege of purchase at any time during said term at a fixed price.

Wm. H. Neff entered upon said leasehold premises and continued in the possession thereof until the 2nd day of May, 1892, when he made an assignment for the benefit of all his creditors to Wm. J. Breed, Alexander McDonald and Wm. M. Ramsey. Neither the lessee nor his assignees elected to purchase said leasehold premises under the option to do so in said lease contained.

I find that the defendants elected not to take said leasehold under said deed of assignment.

Counsel for plaintiff has not resisted this finding of fact very strenuously, but has taken the ground that the title to this leasehold vested in the defendants immediately on the delivery to them of the deed of assignment, and that by such vesting, by privity of estate they became and have continued to be personally liable for the rents reserved to plaintiffs in said lease.

Counsel further contend that inasmuch as title vested by such delivery, the assignees had no right to elect, and that even if they had such right, the only way the assignees could divest themselves of the title would be by a regular conveyance for that purpose.

In the case of City of Cincinnati v. Goodhue, 20 W. L. B., 370, Taft, J., held that: "An assignee of a general assignment for the benefit of creditors under the insolvent laws of Ohio, does not, by mere acceptance of such assignment, become liable to payment under a lease which previous to such assignment belonged to his assignor, even if the leasehold is specifically mentioned in the assignment.

Such assignee has the right to decide whether the leasehold will benefit his estate, and has a reasonable time in which to elect to accept or reject the same. Mere entry upon the premises to remove the goods of the assignor is not an election to take the same. If, however, the assignee enters the premises and uses the same for the benefit of the estate, this is an election to take the lease, and makes the assignee personally liable for the rent."

In the case of Morrison et al. v. Bruce, 1 N. P. 106, Hollister, J. of this court makes a quaere so pertinent and searching as to the character and effect, as conveyances generally, and as conveyances of such leaseholds particularly, of deeds of assignment for the benefit of creditors under the laws of Ohio, as to compel the gravest consideration.

Judge Hollister expressed no opinion upon the question as its determination was not necessary to a decision of that case, he having found that the assignee had elected to take the lease, but the questions raised by the learned judge seem to tend toward a conclusion different from that reached by the distinguished court in City v. Goodhue, supra.

Upon deliberation I adopt the view of the law laid down in City v. Goodhue, and with extreme diffidence endeavor to answer the questions propounded in Morrison v. Bruce.

The court in Morrison v. Bruce quotes from the opinion in City v. Goodhue, assignee, which quotation I insert here, as it is the gist of that opinion.

"The only reported case in Ohio on the subject, so far as I am advised, is City of Cincinnati v. Goodhue, Assignee, 20 Bull. 370, where the superior court of Cincinnati in general term held expressly contrary to the proposition just advanced. The conclusion of the court was based on the similarity of the Ohio assignment laws to the laws

governing the administration of estates under bankrupt proceedings. Says the learned judge who decided that case: 'This brings us, then, to the position of an assignee for the benefit of creditors under the insolvent laws of Ohio. He stands in a very different position from the assignee for the benefit of creditors at common law. He much more nearly resembles in his rights and duties the assignee in bankruptcy. Under our law he represents not the rights of the assignor, but the rights of creditors.

He acquires by operation of law those rights, and not by virtue of the deed, because the assignor had no power to convey them. * * * We think that if an assignor could force upon his creditors the burden of a leasehold worth less than nothing it would defeat the object of the statute, which is to enable the assignee in every way best to preserve the rights of creditors. Although named by deed, his right to represent creditors is his by law, not by deed, and gives him, we think, the right to reject what of the assignor's chattels is a burden.' ''

And then goes on to say:

''But this notion of an Ohio assignment for the benefit of creditors comes in sharp conflict with several authorities of a high character. In Johnson v. Sharp, 31 Ohio St., 611, Sharp was a resident of Ohio, and was a creditor of Wallace who lived in Missouri. Wallace executed in Missouri a deed of assignment to Sharp and placed it in the post office for transmission. It was held that the assignment was complete and passed title from the time the deed was placed in the post office, and was good as against subsequent attaching creditors. Touching upon the subject of this discussion, say the court: 'Nor is the title of an assignee of such non-resident debtor at all affected by the fact that a probate court of the county in which such assigned property may be located has assumed jurisdiction over the administration of such trust. The validity of such assignments is not, in any case, affected by this legislation, but only the mode of administering them; so that the validity of all such assignments must be determined by the general law in relation thereto.' Again: 'The sole question in the case is, did the assignment of the attached property from Wallace to Sharp take effect as against the attachment of the plaintiff in error under the rules of the common law?' The question was answered in the affirmative. 'In our opinion,' say the court, 'the assignment was complete and effectual to pass title to the assignee, eo instanti that the deed was placed in the postoffice.' And in speaking on this subject, the court said in Meyers v. Hellman, 91 U. S. 496, on page 502: 'The statute of Ohio is not an insolvent law in any proper sense of the term. It does not compel, or in terms authorize assignments. It assumes that such instruments were conveyances previously unkown, and only prescribes a mode by which the trust shall be enforced. * * * There is nothing in the act resemb-

ling an insolvent law. * * * It leaves his (insolvent's) after acquired property liable to his creditors precisely as though no assignment had been made. The provisions for enforcing the trust are substantially such as a court of chancery would apply in the absence of statutory provision. The assignment in this case must, therefore, be regarded as though the statute of Ohio to which reference is made, had no existence.' This case and Johnson v. Sharp, are referred to and followed in Shroder v. Tompkins, 58 F. 672, where, among other things, the court, Baker, J., holds that 'the Ohio statute relative to assignments for the benefit of creditors merely prescribes the method of enforcing and administering the trust after it is created, and validity and character of the assignment is to be determined by the common law.

''Now under the common law the assignee had no right to elect whether or not he would accept the lease as a part of the assignment and become only liable to its covenants by reason of his acceptance. He became subject to them, nolens volens, by virtue of the assignment itself, which raised between him and the lessor the privity of estate, which is the basis of liability. White v. Hunt, L. R. 6, Ex. 32; Howe v. Kennet, 3 Ad. and E. 659. The distinction is shown in Hoyt v. Stoddard, 2 Allen, 442, where it is said: ''The former becomes liable without entry by accepting the deed, while the latter is chargeable only by actual proof of entry, or unequivocal proof of an acceptance of the lease.' ''

''But what the law is on this subject, as the supreme court may eventually announce, is really not material to the decision of the case, as we have shown that the assignee has elected to take the lease, and the only further question is as to the nature of the assignee's liability.''

The case of Johnson v. Sharp was decided at the December term of the supreme court, 1877, when what now is R. S. 6335 stood as originally enacted. 1859, 56 O. L. 231 amended 1860, 57 O. L. 39, S. C. 709—715.

In the revision and consolidation of the statutes which was adopted by legislative enactment as of January 1st, 1880, this important clause appears for the first time, ''any such assignment shall take effect only from the time of its delivery to the probate judge, and the exact time of such delivery shall be endorsed thereon by the probate judge who shall immediately note the filing thereof on the journal of the court; and it may be delivered by the assignor to the probate judge either before or after its delivery to the assignee.''

Prior to 1880 a deed of assignment for the benefit of creditors in Ohio was a common law deed in a stricter sense than it has been since.

Furthermore in the case of Johnson v. Sharp the deed was made outside of the state of Ohio in the state of Missouri, and McIlvaine, J. by inter state comity gives the deed the same force and effect as to

vesting of title in this state that it had under the laws of Missouri, and although the opinion does not state in express terms that the comomn law obtained in this respect in that state, it is manifest that the court had to give the deed effect as at common law in order to sustain it at all.

True the court says on page 620, ''Now surely, under these conditions, the assigned property also being in this state, there can be no good reason found, why the courts of this state should refuse to recognize and administer this trust for the beneficiaries in as full and ample a manner as if the assignment had been executed in this state or by a resident of this state'' thereby indicating that it applied the law as it obtained at that time in this state.

Finally, a reading of Johnson v. Sharp makes it plain that the supreme court was pleased to be able to hold as it did as to the vesting of title in that case, as it comported with their notion of the equities of the case.

The case of Meyer v. Hellman, 91 U. S. 496 was decided in October, 1875, likewise prior to the change in the Ohio Law of 1880.

The case of Shroder v. Tompkins 58 Federal Reporter 672 cited by Hollister, J. was decided November 1893, and quotes and follows Johnson v. Sharp and Meyer v. Hellman, apparently taking no notice of the change in the statute, and not even mentioning the case of Blandy v. Benedict decided in 1884, 42 Ohio St., 295, quoted from by Taft, J., as follows:

''By the assignment, the rights of the creditors passed to the assignee as matter of law. The possession of the assignee was the possession of the creditors. The right of creditors to seize the property in the hands of the assignee did not exist, but the assignee was bound, in law, to administer the trust for their benefit. Every right which the creditors might have asserted against the propetry before the assignment, the assignee is bound to secure for their benefit after the assignment.''

It is well to notice that the opinion of the court in Blandy v. Benedict was delivered per McIlvaine. J., who delivered the opinion in Johnson v. Sharp. Blandy v. Benedict was followed on this point in Westlake v. Westlake, 47 Ohio St., 317, in 1890; Covert v. Rhodes, 48 Ohio St., 70, in 1891; Betz v. Snyder, 48 Ohio St., 498, in 1891.

The same point is also made in Cross, Trustee v. Carstens, 49 Ohio St., 573 in 1892 all before Baker, J. decided Schroder v. Tompkins and no notice is taken of this point or these cases.

Since then the supreme court has reiterated the law in Claflin v. Evans 36 W. L. B. 271 October 20th, 1896. From R. S. 6335 and these later cases it is clear, that although a deed of assignment for the bene fit of creditors in Ohio may be in form and execution and in many particulars a common law deed, nevertheless, as to two very important particulars, delivery and effect it is controlled by statute.

The U. S. supreme court said in Meyer v. Hellman that the Ohio statute is not an insolvent law in the full sense of a Bankruptcy law. It does not compel or authorize assignments. It leaves the insolvent's after acquired property liable to his creditors precisely as though no assignment had been made.

Nevertheless, Title II Chapter 4 is in some respects an insolvent law, and as it now stands it has been held by our supreme court to be similar to a bankruptcy law in one important feature, at least, that is, that the assignee is clothed with the fullest power and authority as the representative of the creditors.

This then is the important point. Although the statute does not specifically provide the form and character of the conveyance and leaves that to the common law, yet when any person shall make such conveyance the law provides where it must be filed what constitutes delivery and its effect.

The law as provided by Title II Chapter 4 apprehends the transaction and the property, and with the filing of the deed of assignment, the assignee eo instanti is invested by virtue of the statutes with the character and capacity of representative of the creditors, and it is by reason of this character that he has the right to elect whether or not he will take title to what has been termed, speaking figuratively from the civil law, a damnosa hereditas.

This is the point decided in the long line of bankruptcy cases cited in City v. Goodhue, of which the series of holdings by Lord Ellenborough and the opinion of Lord Tenterden in Carter v. Warne are the leaders.

In none of these cases was it deemed necessary for the assignee to do anything to divest himself of title, the theory seeming rather to be that title to property of this doubtful character does not vest until the assignee has elected either directly, by word or act, or indirectly by laches to take it. Counsel for plaintiff in the case at bar has been at great pains to demonstrate that by reason of the privilege of purchase contained in the lease, this leasehold is real and not personal property. This is probably true, but the statute makes no distinction, and operates alike on conveyances of real and personal property made for this purpose, conferring the same powers on the assignee as representative of the creditors.

I found above on the facts that the defendants did not elect to take this leasehold, I now conclude on the law that they are not liable on the covenants contained in the lease to pay rent.

Judgment for defendants.

Samuel J. Crawford, for Plaintiff.

Wm. W. Ramsey, for Defendants.